UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL A. STONE,

    Plaintiff,                                        Civil Action No. 09-13923

v.                                                   HON. BERNARD A. FRIEDMAN
                                                      U.S. District Judge
                                                      HON. R. STEVEN WHALEN
COMMISSIONER OF SOCIAL             U.S. Magistrate Judge
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Michael A. Stone brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying his application for Disability Insurance Benefits ("DIB") under the Social Security Act. Plaintiff filed a motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) and Defendant filed a summary judgment motion under Rule 56(c), both of which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's motion be GRANTED, and Plaintiff's motion be DENIED.

## PROCEDURAL HISTORY

Plaintiff filed a claim for DIB on October 19, 2004, alleging disability as of January 1, 1996 (Tr. 58). After the initial denial of the claim, Plaintiff requested an administrative hearing, held on September 20, 2006 in Evanston, Illinois (Tr. 274). Administrative Law Judge ("ALJ") Daniel Dadabo presided. Plaintiff, represented by attorney Steven Kaufman, testified (Tr. 277-291), as did his wife, Beth Stone (291-298) and Vocational Expert ("VE") Frank Mendrick (Tr. 299-303). On November 17, 2006, ALJ Dadabo determined that

Plaintiff was not disabled (Tr. 31).  On August 7, 2009, the Appeals Council denied review (Tr. 4-6).  Plaintiff filed for judicial review of the final decision on October 5, 2009.

## BACKGROUND FACTS

Plaintiff, born June 15, 1950, was 56 when ALJ Dadabo issued his decision (Tr. 58). He received a GED and worked previously as a carpet installer, security guard, and pin setter at a bowing alley (Tr. 70, 74).  He alleges disability as a result of hearing loss, back problems, and post traumatic stress syndrome (Tr. 69).

### A. Plaintiff's Testimony

Plaintiff, 5'7" and 240 pounds, opined that mental problems and herniated disks prevented him from working (Tr. 278).  Noting that he last worked as a carpet installer in 1996, Plaintiff reported that he was unable to stand walk, kneel, bend, reach, or hold on a constant basis (Tr. 279).  Prior to the carpet installing position, Plaintiff reported that he worked as a Brinks security guard, but quit after his runs became increasingly dangerous (Tr. 286-287).  He stated that as of 1999, he required sitting breaks from housework every couple of hours (Tr. 279).

Plaintiff indicated that he continued to fish, but had not hunted in the past year (Tr. 280).  He reported that he currently took Xanax which reduced his level of stress (Tr. 281). He described himself as "reclusive," noting that he and his wife kept to themselves (Tr. 281). Remarking that his wife did not drive, he indicated that he regularly shopped for groceries but avoided crowds  (Tr. 281).  Plaintiff indicated that he read the newspaper regularly, describing himself as a "war junkie" who watches Fox News and "all of the military channels" (Tr. 282).  Plaintiff reported that while working as a janitor he would become confrontational when criticized (Tr. 283, 290).  He opined that he was not up to either the physical or psychological strain of holding a job (Tr. 282-283).

Plaintiff testified that he saw a psychiatrist, Dr. Logsdon, every five weeks, noting that she had been "a great help" (Tr. 284-285). He indicated that he currently took prescription pain medication for continuing back problems (Tr. 285). He added that he had acquired tinnitus during active duty in Vietnam (Tr. 288).

**B. Plaintiff's Wife's Testimony**

Beth Stone testified that her husband's usual mood was "withdrawn" with a flat affect (Tr. 292). She described her husband as a newspaper/television junky, noting that he watched "Fox TV" for several hours each day (Tr. 292). She indicated that Plaintiff had very little interaction with individuals other than herself (Tr. 292). She reported that she took responsibility for "structuring his day," noting that his need to be reminded of appointments and scheduled activities had become more acute in the last six or seven years (Tr. 293). She indicated that due to her own health concerns and her husband's inability to interact with others, they intended to move to a rural area within the year (Tr. 294-296).

**C.    Medical Evidence**

### 1.  Treating Sources

March, 2000 treating notes indicate that Plaintiff experienced obesity, GERD, and fatigue (Tr. 209). He was advised to reduce his alcohol intake (Tr. 209). In February, 2001, Plaintiff reported back stiffness, attributing the pain to either a recent boat ride while on vacation or lifting carpets at work (Tr. 117). A CT scan of the lumbar spine showed generalized disc bulging but no evidence of stenosis (Tr. 116). The following month, a rehabilitation assessment found that Plaintiff's "affect and responses" were "appropriate" (Tr. 129). In May, 2002, an MRI of the lumbar spine showed "some degenerative disc disease and spondylosis" but no disc herniations (Tr. 132).

In September, 2003, treating physician Robert C. Barnes, D.O., noted that Plaintiff

believed that he had been depressed "for quite a long time" (Tr. 185). Plaintiff reported that he "had to quit his job because of his wife's seizure disorder" (Tr. 185). Dr. Barnes prescribed Zoloft and recommended that Plaintiff seek counseling (Tr. 185). Plaintiff indicated to Dr. Barnes later the same month that Zoloft "significantly help[ed]" his "outlook and sense of well-being" (Tr. 180). The following month, Dr. Barnes opined that Plaintiff's reports of "sleep disturbance and alienation" were "significantly related to his previous Vietnam exposure" (Tr. 176).

In April, 2004, psychiatrist L. Logsdon, M.D., having evaluated Plaintiff the previous month, opined Plaintiff's diagnosis of Posttraumatic Stress Disorder ("PTSD") qualified him for VA benefits (Tr. 270). Dr. Barnes' May, 2004 treating notes indicate that he was currently taking Paxil for anxiety and depression (Tr. 171). An August, 2004 intake assessment noted that Plaintiff thought "day and night" about his combat experiences (Tr. 145). He stated that he had no friends and only one acquaintance (Tr. 146). Plaintiff was oriented to person, place, and time with normal speech patterns (Tr. 146). Plaintiff was diagnosed with PTSD which "had worsened over the last 6-12 months" (Tr. 146). He was also noted to have tinnitus stemming from his combat experience and depression (Tr. 146-147). He was assigned a GAF of 46 and was deemed capable of managing his own benefits[1] (Tr. 146).

In October, 2004 Dr. Barnes noted that Plaintiff "had not been compliant with weight loss or diet," but was "doing pretty well" in terms of psychiatric treatment and medication (Tr. 165).

---

[1] A GAF score of 41-50 indicates "[s]erious symptoms ... [or] serious impairment in social, occupational, or school functioning," such as inability to keep a job. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* at 34 (*DSM-IV-TR*) (4th ed.2000).

In November, 2004, Dr. Logsdon, noting that Plaintiff was isolated with "poor interpersonal relationships," opined that he was "unemployable" (Tr. 158). In support of her finding, Dr. Logsdon noted that all of the 16 jobs that Plaintiff held between 1970 and 1991 "ended due to conflict with [a] co-worker" (Tr. 159). She characterized Plaintiff as "depressed, anxious, suspicious [and] on guard at all times (Tr. 162). She assigned him a GAF of 35[2] (Tr. 163).

Also in November, 2004, chiropractor Paul A. Rumph, having treated Plaintiff since August, 1997, opined that disc degeneration, sciatica, and lumbalgia prevented repetitive sitting, standing, walking, lifting, carrying and handling (Tr. 213).

In an April, 2005 letter on behalf of Plaintiff's quest for VA benefits, Dr. Logsdon reiterated her earlier opinion that Plaintiff was unemployable, noting that he experienced "constant depression and anxiety" (Tr. 264). She noted that since retiring, he experienced "rage behavior," which had been exacerbated by his wife's recent retirement (Tr. 264). In September, 2006, Dr. Logston composed a short letter on behalf of Plaintiff's SSA disability claim, stating that Plaintiff had experienced PTSD since serving in Vietnam (Tr. 273).

### 2. Non-Treating Sources

In November, 22, 2005, Plaintiff was deemed 100 percent disabled by the VA as of February 27, 2004 (Tr. 95). A December 2004 Psychiatric Review Technique for the period between January, 1996 and the expiration of insurance on September 30, 1999 found insufficient evidence of a psychological condition (Tr. 102).

---

[2] A GAF score of 31-40 indicates "[s]ome impairment in reality testing or communication ... or major impairment in several areas, such as work, school, family relations, judgment, thinking or mood." *Diagnostic and Statistical Manual of Mental Disorders--Text Revision* at 34 (*DSM-IV-TR* ), 34 (4th ed.2000)

### D.   Vocational Expert Testimony

Citing the *Dictionary of Occupational Titles* ("DOT"), VE Frank Mendrick classified Plaintiff's former work as a carpet cleaner and Brinks Security guard as semi-skilled at the heavy exertional level and work as a janitor as semi-skilled/medium[3] (Tr. 300). The ALJ then posed the following set of limitations to the VE, presumably taking into account Plaintiff's age, education, and work background:

> "Assume that the person has only a light [Residual Functional Capacity] for occasional bending on level surfaces [and] moderate restrictions present from post traumatic stress disorder that would require no public contact work, only unskilled repetitive work, no extended communications."

(Tr. 301).

The VE testified that the above limitations would rule out all of Plaintiff's former work, finding however that the individual could perform the unskilled, exertionally light work of an assembler (7,000 positions in the regional economy), inspector (4,200), or hand packager (9,000) (Tr. 302).

The ALJ then amended the hypothetical question to include the additional limitations of "unskilled repetitive work [with] a specific daily schedule of that he's going to do each day, several days in advance. In other words, no changes, or no capacity for changes of a routine nature in the work setting." (Tr. 302). The VE responded that the additional

---

[3] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. *Very Heavy* work requires "lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. § 404.1567(e).

limitations would preclude most of the positions represented by the job findings (Tr. 302). The VE also testified that if the individual had "a very low threshold" for occasional criticism or was absent for more than seven days a year, all of the above-cited work would be precluded (Tr. 302-202). The ALJ concluded the hearing by reminding Plaintiff that whether he was disabled by his date last insured ("DLI") of September 30, 1999, rather than presently, was dispositive of the claim (Tr. 305).

### E. The ALJ's Decision

Citing Plaintiff's medical records, the ALJ found that as of September 30, 1999, Plaintiff experienced the severe impairments of "major depression with post-traumatic stress disorder (PTSD); lumbar disc herniation at L5/S1; hypertension; and obesity," determining however that none of the impairments met or equaled any impairment listed in 20 CRF Part 404, Subpart P, Appendix 1 (Tr. 25). The ALJ found that while Plaintiff was unable to perform any of his past relevant work, he retained the following residual functional capacity ("RFC"):

> "Light work that could be performed on level surfaces and which did not require more than occasional bending. Secondary to moderate restrictions of social functioning, daily living activities and concentration, persistence and pace, this work should not have involved public contact or extended communication, and necessarily should have been unskilled and repetitive to take account of limited adaptive functioning and social interaction anxieties. The undersigned further finds that the record does not support any instances of decompensation or deterioration and that no 'C' criteria evidence is present"

(Tr. 26). Adopting the VE's job findings, above, the ALJ found that Plaintiff could perform the unskilled light work of an assembler, inspector, and packager (Tr. 30).

Pursuant to SSR 96-7p, the ALJ discounted Plaintiff's allegations of limitation, observing that "[a]s a witness, the claimant was not emotionally fragile or withdrawn" (Tr. 28). The ALJ also discounted Dr. Logsdon's disability opinion, noting that Plaintiff did all

-7-

of the grocery shopping for his wife and "travel[ed] with others five to six [times] a year to hunt" (Tr. 29). The ALJ concluded that Plaintiff was "neither a hermit, nor entirely reclusive and can relate at least superficially with others" (Tr. 29).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected

-8-

to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### A. A Psychiatric Consultative Examination

Plaintiff argues that the ALJ erred by failing to obtain a consultive psychological examination. *Plaintiff's Brief, Docket #8* at 13. He notes that the ALJ stated at the September, 2006 hearing that an assessment was necessary to determine whether PTSD created a disability prior to the 1999 expiration of benefits. *Id.* at 13-14 (*citing* Tr. 304-305). Plaintiff also points out that he received a letter three weeks after the hearing, informing him that a psychological assessment was needed for the evaluation of his claim, but that an examination was never scheduled. *Id.* at 14 (*citing* Tr. 10). Plaintiff argues that the consultive examination was necessary to making a fair disability determination, contending that he did not receive "a full and fair inquiry" as required by 20 C.F.R § 404.944. *Id.* at 14-15 (*citing* 20 C.F.R. § 404.1519a(2)(b)).

The conclusion that Plaintiff was not disabled prior to the DLI of September 30, 1999

is well supported by the record. Therefore, the ALJ was not required to order a consultive examination. "Although under certain conditions the Secretary *may* order and pay for a consultative examination, he is not required to do so if the record contains sufficient evidence upon which to base a disability determination." *Brown v. Bowen,* 739 F.Supp. 1129, 1130 (N.D.Ohio 1990)(emphasis in original)(*citing Landsaw v. Secretary of Health and Human Services,* 803 F.2d 211 (6th Cir.1986). In this case, the record contains "sufficient evidence."

For example, while Plaintiff's asserts that the ALJ was required to order another psychological exam, he does not explain why an August, 2004 psychological intake assessment was inadequate to summarize his mental condition prior to the DLI. To be sure, treating records from September, 2003 forward could be used to support a finding that PTSD, accompanied by environmental stressors, created disability. However these same records do not support the conclusion that Plaintiff experienced disability level psychological limitations *prior to* September 30, 1999. In fact, the transcript contains no objective medical evidence to support this claim.

Dr. Barnes' September, 2003 treating notes indicate that Plaintiff did not receive counseling or psychotropic medication until almost four years after the DLI (Tr. 180, 185). While Dr. Barnes notes suggest that sleep disturbances and alienation may have predated the DLI (Tr. 176), Plaintiff's quest for mental health treatment appears to have been precipitated by life style changes brought about by his wife's recent health problems (Tr. 185). An August, 2004 assessment concluded that although Plaintiff had experienced long-term symptoms of PTSD, his condition had "worsened" noticeably after September, 2003 (Tr. 146). Dr. Logsdon's April, 2005 letter on behalf of the application for 100 percent VA benefits also states that Plaintiff's condition had recently been exacerbated by his wife's retirement (Tr. 264). In contrast to Dr. Logsdon's 2005 opinion that Plaintiff was

"unemployable," February, 2001 treating notes show that as of that time Plaintiff was capable 1) working at least part-time and 2) traveling to Florida on vacation (Tr. 117, 264). Because the record easily supports the Step Five conclusion that Plaintiff could perform a range of unskilled work prior to September, 1999, the ALJ did not err in refraining from purchasing a psychological evaluation.

### B. Substantial Evidence

For overlapping reasons, the more generalized argument that the ALJ's conclusion was not supported by substantial evidence is also unavailing. In particular, Plaintiff faults the ALJ for rejecting Dr. Logsdon's opinion that long-term PTSD prevented him from working (Tr. 273). *Plaintiff's Brief* at 17-18.

Pursuant to *Wilson v. Commissioner of Social Sec.* 378 F.3d 541, 544 (6th Cir. 2004), an ALJ's failure to supply "good reasons" for rejecting a treating physician's opinion constitutes reversible error. *Id.* at 547; 20 C.F.R. § 404.1527(d)(2). However, here, the ALJ provided ample reasons for discounting Dr. Logsdon's assessment of both his pre and post LDI condition, noting that the treating psychiatrist's statement that Plaintiff was psychologically incapable of spending more than minimal time with his wife contradicted Beth Stone's testimony (Tr. 29). The ALJ also noted as follows:

> "Although Dr. Logsdon longitudinally is in a superior position to describe the claimant's functioning, her reports are conclusory, speculative, short on mental status findings, and largely based on the claimant's own reports. . . . For example, according to Dr. Logsdon, the claimnant 'lives as a hermit spending the majority of his time alone in the North Woods.' In actuality, he lives with his wife and does all their shopping; and travels with others five to six [times] a year to hunt"

(Tr. 29). The ALJ also observed that Plaintiff's ability to do all the family shopping showed that he was capable of at least superficial contact with the public (Tr. 28). He noted that the fact that Plaintiff was an admitted "news junk(ie) signifie[d] that he is capable of

understanding, remembering and carrying out at least simple instructions" (Tr. 28). Indeed, Plaintiff's own December 11, 2006 letter to the Appeals Council disputing the ALJ's findings is well organized and articulated.

Finally, the Court notes that Plaintiff was granted 100 percent VA disability as of February 24, 2004 (Tr. 95). However, the VA's disability finding was not dispositive of whether Plaintiff was disabled as of September 30, 2009 and in fact implies that he *could* work before February, 2004. While the Court is mindful that a 100 percent VA disability determination is entitled to some weight, *McCartey v. Massanari,* 298 F.3d 1072, 1075 (9th Cir. 2002)(*citing Stewart v. Heckler,* 730 F.2d 1065, 1068 (6th Cir.1984)), Plaintiff had apparently been granted less than 100 percent disability as of the DLI. Therefore, the ALJ was not required to adopt or even consider the VA's determination. *Green v. Commissioner of Social Sec.*, 2008 WL 3978476, *4 (W.D.Mich.2008)(no case law "reversing an ALJ's decision for failing to give weight to a VA decision of anything less than total disability").

In closing, the Court notes that its recommendation to uphold the ALJ's finding should not be read to trivialize Plaintiff's service to this country or his legitimate limitations. Nonetheless, the finding that Plaintiff was not disabled as of September 30, 1999 is well within the "zone of choice" accorded to the fact-finder at the administrative hearing level and should not be disturbed by this Court. *Mullen v. Bowen*, *supra*.

## CONCLUSION

For the reasons stated above, I recommend that Defendant's Motion for Summary Judgment be GRANTED, and Plaintiff's Motion for Judgment on the Pleadings DENIED.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D.

Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/R. Steven Whalen  
R. STEVEN WHALEN  
UNITED STATES MAGISTRATE JUDGE

Dated: August 16, 2010

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on August 16, 2010.

s/Susan Jefferson  
Case Manager